OPINIONS OF THE SUPREME COURT OF OHIO
        The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
        Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
        NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Wyant, Appellant.
The State of Ohio, Appellant, v. May et al., Appellees.
The State of Ohio, Appellant, v. Van Gundy et al., Appellees.
[Cite as State v. Wyant (1993),      Ohio St.3d      .]
Criminal law -- R.C. 2927.12, the ethnic intimidation law, is
        constitutional under the United States and Ohio
        Constitutions.

R.C. 2927.12, the Ohio Ethnic Intimidation Act, is
        constitutional under the United States and Ohio
        Constitutions.  (Wisconsin v. Mitchell [1993], 508
        U.S.     , 113 S.Ct. 2194, 124 L.Ed. 2d 436, followed;
        State v. Wyant [1992], 64 Ohio St.3d 566, 597 N.E.2d 450,
        vacated.)

        (Nos. 91-199, 91-1519 and 91-1211/91-1589 -- Submitted
October 12, 1993 -- Decided January 12, 1994.)
        On Remand from the United States Supreme Court, No. 92-568.

        W. Duncan Whitney, Delaware County Prosecuting Attorney,
and Sue Ann Reulbach, Assistant Prosecuting Attorney, for
appellee in case No. 91-199.
        Mathias H. Heck, Jr., Montgomery County Prosecuting
Attorney, and Carley Ingram, Assistant Prosecuting Attorney,
for appellant in case No. 91-1519.
        Michael Miller, Franklin County Prosecuting Attorney, and
Katherine J. Press, Assistant Prosecuting Attorney, for
appellants in case Nos. 91-1211/91-1589.
        Lee I. Fisher, Attorney General, Simon B. Karas, Deputy
Chief Counsel, and Andrew S. Bergman, Assitant Attorney
General, as suplementary counsel for appellee in case No.
91-199 and appellants in case Nos. 91-1211/91-1589 and 91-1519.
        Gloria A. Eyerly, Interim Ohio Public Defender, Susan B.
Gellman, Assistant Public Defender, and Robert L. Lane, Chief
Appellate Counsel, for appellant in case No. 91-199.
        Terry L. Lewis, for appellee James B. May, Jr. in case
91-1519.
        Gary C. Schaengold for appellee Mark J. Staton in case No.

91-1519.

Gary W. Crim, for appellee Aaron L. Plessinger in case No. 91-1519.

Harold Wonnell, for appellee Clancy Van Gundy in case Nos. 91-1211/91-1589.

Andrew E. Lyles, for appellee Casey Van Gundy in case Nos. 91-1211/91-1589.

Samuel B. Weiner, for appellee Franklin D. Clay in case Nos. 91-1211/91-1589.

Judith M. Stevenson, Franklin County Public Defender, and Allen V. Adair, Assistant Public Defender, for appellee Robert Eric Blazer in case Nos. 91-1211/91-1589.

Tyack & Blackmore Co., L.P.A., and Thomas M. Tyack, for appellee Bryan Krebs in case Nos. 91-1211/91-1589.

Arnold S. White, Daniel T. Kobil and Susan B. Gellman, American Civil Liberties Union of Ohio Foundation, for appellee Charles Culp in case Nos. 91-1211/91-1589.

Terry Breedlove, Jr., pro se, in case Nos. 91-1211/91-1589.

Rinehart Law Office and Harry R. Reinhart; Gold, Rotatori, Schwartz Co., L.P.A., and John Pyle; and Charles E. Atwell, urging reversal for amici curiae, National and Ohio Associations of Criminal Defense Lawyers in case No. 91-199 and affirmance in case Nos. 91-1519 and 91-1211/91-1589.

Bricker & Eckler and Sarah J. DeBruin, urging reversal for amicus curiae, American Civil Liberties Union of Ohio in case No. 91-199.

Robert D. Horowitz, Stark County Prosecuting Attorney, Kristine Wilson Rohrer and Ronald M. Caldwell, Assistant Prosecuting Attorneys; John E. Murphy, Executive Director; Paul Cox; and Robert Cornwell, Executive Director, urging affirmance for amici curiae, Ohio Prosecuting Attorney's Association, Fraternal Order of Police and Buckeye State Sheriff's Association in case NO. 91-199.

Ronald J. O'Brien, Columbus City Attorney, Sharon Sobol Jordan, Cleveland Law Director, Fay Dupuis, Cincinnati City Solicitor, J. Anthony Sawyer, Dayton Law Director, and Edwin Romero, Youngstown Law Director, urging reversal for amici curiae, cities of Columbus, Cleveland, Cincinnati, Dayton and Youngstown in case Nos. 91-1519 and 91-1211/91-1589 and affirmance in case No. 91-199.

Jones, Day, Reavis & Pogue, Steven T. Catlett, Richard A. Cordray and Jeffrey S. Sutton; Schwartz, Kelm, Warren & Rubenstein and Nelson E. Genshaft; Ruth L. Lansner, Steven M. Freeman and Michael A. Sandberg, urging affirmance for amici curiae, Anti-Defamation League, Columbus Urban League, National Association for the Advancement of Colored People (Columbus and Dayton Branches), Ohio Council of Churches, Japanese American Citizens League (Ohio Chapter), Ohio Human Rights Bar Association and Organization of Chinese Americans (Greater Cleveland Chapter) in case No. 91-199, and reversal in case Nos. 91-1519 and 91-1211/91-1589.

Alphonse A. Gerhardstein, urging reversal for amici curiae, Housing Oportunities Made Equal (HOME), Cincinnati Multiracial Alliance, Cuyahoga Plan of Ohio, Inc., Toledo Fair Housing Center, Cincinnati Human Relations Commission and National Fair Housing Alliance in case Nos. 91-1211/91-1589.

These cases come to us on remand from the United States Supreme Court for the purpose of "further consideration in light of Wisconsin v. Mitchell, 508 U.S. ___ [113 S.Ct. 2194, 124 L.Ed.2d 436] (1993)."

We have reviewed the United States Supreme Court's opinion in Wisconsin v. Mitchell (1993), 508 U.S. ___, 113 S.Ct. 2194, 124 L.Ed.2d 436, our opinion in State v. Wyant (1992), 64 Ohio St.3d 566, 597 N.E.2d 450, and the briefs of the parties. For the reasons stated in Wisconsin v. Mitchell, we vacate our opinion in State v. Wyant and uphold the constitutionality of R.C. 2927.12, the ethnic intimidation law, under both the United States and Ohio Constitutions.

In case No. 91-199, we affirm the judgment of the court of appeals and reinstate the judgment of the trial court. In case No. 91-1519, we reverse the judgment of the court of appeals and remand for a new trial. In case Nos. 91-1211 and 91-1589, we reverse the judgment of the court of appeals and remand for a new trial.

Judgments accordingly.

Moyer, C.J., Douglas, Resnick and F.E. Sweeney, JJ., concur.

Wright and Pfeifer, JJ., dissent.

A.W. Sweeney, J., dissents and concurs in Part II of the dissenting opinion of Wright, J., but does not participate in State v. Van Gundy, case Nos. 91-1211 and 91-1589.

Wright, J., dissenting. I have always believed that legal scholars and most judges consider freedom of speech provisions a bulwark to be defended. Today, sad to say, we have beaten a hasty retreat from our previous pronouncement in this very case, and Section 11, Article I of the Ohio Constitution is being treated more as an obstacle to be avoided than as an affirmative statement of a fundamental right and a ringing statement of truth.

I recognize the tension between the search for social justice and the long and honorable tradition of defending speech from government intrusion. I also appreciate the political benefits of punishing the distasteful "hate speech" found here. However, I cannot compromise the principles noted above and must respectfully dissent.

I am extremely disappointed that a majority of this court are willing to dispose of a case of significant constitutional import through a brief entry devoid of analysis. I feel certain that the United States Supreme Court, in remanding this case, expected this court to engage in a thorough analysis not only of the application of Wisconsin v. Mitchell (1993), 508 U.S. ___, 113 S.Ct. 2194, 124 L.Ed.2d 436, but also of Section 11, Article I of the Ohio Constitution. Certainly, the citizens of Ohio deserve no less.

If the Ohio statute were identical or nearly identical to the Wisconsin statute, a rubber-stamp entry would be understandable. However, the two statutes are completely different in both wording and scope of application, as are the free speech provisions of the United States Constitution and the Ohio Constitution.

Under the Wisconsin statute, the maximum sentence a judge may impose is increased when the defendant intentionally selects the victim because of his or her protected status.1

Moreover, the Wisconsin statute applies across the board to all criminal offenses (except those where proof of race, ancestry, etc. is already an element of the crime itself). Former Wis. Stat. Section 939.645(4). In contrast, the Ohio statute creates a new offense, ethnic intimidation (R.C. 2927.12), one element of which is the commission of any of five offenses: aggravated menacing (R.C. 2903.21); menacing (R.C. 2903.22); criminal damaging or endangering (R.C. 2909.06); criminal mischief (R.C. 2909.07), and certain types of telephone harassment (R.C. 2917.21[A][3], [4], or [5]). A defendant can be found guilty under R.C. 2927.12(A) if he or she violates one of the predicate offenses "by reason of the race, color, religion, or national origin of another person or group of persons." Conviction under R.C. 2927.12 is an offense one degree higher than the predicate offense. R.C. 2927.12(B).

Because of these differences between the Wisconsin statute and the Ohio statute, it is not at all apparent that the Supreme Court's ruling in Wisconsin v. Mitchell mandates holding that the Ohio statute is constitutional. In fact, I am persuaded that these critical differences support an opposite conclusion. I find the Wisconsin statute distinguishable from the Ohio statute in ways which render the Ohio statute unconstitutional under both the United States and Ohio Constitutions.

I

Of particular concern is the difference in the scope of application of the statutes. Under the Wisconsin statute, the penalty enhancement for intentional selection of the victim applies to almost all offenses. On the other hand, the predicate offenses upon which the Ohio statute is based are limited to those criminal offenses most closely associated with expressive conduct or unprotected speech. I recognize and agree that the state may punish some speech, such as fighting words. However, the government may not make distinctions based on the viewpoint or content of the speech. This focus on expressive conduct makes the Ohio statute analogous to the statute held unconstitutional by the United States Supreme Court in R.A.V. v. St. Paul (1992), 505 U.S. ___ , 112 S.Ct. 2538, 120 L.Ed.2d 305. As the court in Mitchell characterized it, R.A.V. involved a challenge to a municipal ordinance which prohibited the use of "fighting words" that insult or provoke violence "on the basis of race, color, creed, religion or gender ***." In Mitchell the United States Supreme Court distinguished the Wisconsin statute from the ordinance in R.A.V. "Because the ordinance only proscribed a class of 'fighting words' deemed particularly offensive by the city - i.e., those that 'contain *** messages of "biased-motivated" hatred,' 505 U.S. at ___ , 112 S.Ct. [at 2547-2548], 120 L.Ed.2d [at 323] - we held that it violated the rule against content-based discrimination. See, id., at ___ , 112 S.Ct. [at 2547-2548], 120 L.Ed.2d [at 323-324]. But whereas the ordinance struck down in R.A.V. was explicitly directed at expression (i.e., 'speech' or 'messages') id. at ___ , 112 S.Ct. [at 2547], 120 L.Ed.2d [at 322], the statute in this case is aimed at conduct unprotected by the First Amendment." Mitchell at ___ , 113 S.Ct. at 2200-2201, 124 L.Ed.2d at 446-447.

In the present case, the conduct of the defendants which is unprotected by the First Amendment, i.e., the making of menacing threats, is already prosecutable under R.C. 2903.21 and 2903.22. A prosecution under R.C. 2927.12 is aimed at punishing the content of the "fighting words" used. Consistent with the Supreme Court's ruling in R.A.V., the state may not proscribe a class of "fighting words" which it deems to be particularly offensive. Thus, there is nothing in the Mitchell decision to change our previous conclusion that R.C. 2927.12 "constitutes a greater infringement on speech and thought" than the Wisconsin statute because the Ohio statute "singles out racial and religious hatred as a viewpoint to be punished." State v. Wyant (1992), 64 Ohio St.3d 566, 579, 597 N.E.2d 450, 459 ("Wyant I").

A clear example of the difference between the Wisconsin and Ohio statutes can be seen by applying the statutes to Wyant's conduct. Wyant's conduct would not violate the Wisconsin standard. There is no evidence he selected his victims because they are black. Rather, there is evidence he selected his victims because they had a camp site Wyant wanted his relatives to have and because they had complained to a park official about Wyant's playing loud music. Certainly Wyant chose to use certain words because of the race of his victims. But this fact highlights the problem with the Ohio statute. Wyant was convicted of a felony instead of a misdemeanor solely because he made racial references in his menacing threats. Wyant was more severely punished because of his purported racist feelings, not because of his conduct. In effect, Wyant received six months for aggravated menacing and an additional one year for his expressed racist thoughts. As deplorable as Wyant's beliefs may be, his expression of those beliefs is not separately punishable.

This example reflects another difference between the two statutes. Under the Wisconsin statute the defendant's motive in selecting the victim is a factor the judge may consider during sentencing. In Mitchell, the United States Supreme Court emphasized that a defendant's motive has traditionally been a factor considered during the penalty phase of the prosecution. Id., 508 U.S. at     , 113 S.Ct. at 2199, 124 L.Ed.2d at 445. As discussed at length by Justice Herbert R. Brown in Wyant I, motive is not traditionally a factor in the guilt phase of a prosecution. Id., 64 Ohio St.3d at 571-574, 597 N.E.2d at 453-456. Instead, it is the defendant's intent to commit the act which is traditionally an element of the offense. However, R.C. 2927.12 makes the defendant's motive -- his or her thoughts and beliefs -- an element of the offense. The Wisconsin statute, on the other hand, focuses on the defendant's intent and conduct. Since the Ohio statute directly penalizes biased motive, rather than the conduct of intentionally selecting a victim because of a biased belief, the Ohio statute violates both Section 11, Article I of the Ohio Constitution and the First Amendment to the United States Constitution.

## II

Whether or not the Mitchell decision dictates that R.C. 2927.12 be held constitutional under the First Amendment, I believe that it is unconstitutional under Section 11, Article I

of the Ohio Constitution.2 As we said in Wyant I, "the Constitution of Ohio is even more specific [than the First Amendment]; it guarantees to every citizen freedom to 'speak, write and publish his sentiments on all subjects.'" (Emphasis added.) Id., 64 Ohio St.3d at 577, 597 N.E.2d at 457. Unlike the First Amendment, Section 11, Article I contains not only a negative clause ("no law shall be passed") but also an affirmative clause guaranteeing freedom of speech to all Ohio citizens. It is a basic rule of constitutional construction that "the whole section should be construed together, and effect given to every part and sentence. ***" Froelich v. Cleveland (1919), 99 Ohio St. 376, 124 N.E. 212, paragraph one of the syllabus. Therefore, we must give effect to the affirmative language in Section 11, Article I which is not included in the First Amendment.3 This language constitutes a "promise to affirmatively protect the right" of free speech. Ferner v. Toledo-Lucas Cty. Convention & Visitors Bur., Inc. (1992), 80 Ohio App.3d 842, 848, 610 N.E..2d 1158, 1162.

The historical context within which the Ohio Constitution was written also supports a reading which is more expansive than the First Amendment.4 Early state constitutions were often based on constitutions from other states, not on the federal Bill of Rights. For example, the free speech provision of the 1802 Ohio Constitution appears to have been based on the 1790 Pennsylvania Constitution.5 Reliance on another state's constitutional language reflects the different purposes to be served by the federal Bill of Rights and the state constitutions. To obtain ratification of the United States Constitution, the federal Bill of Rights was added as a curb on the broad powers granted to the national government. The states were seen as protectors of their citizens' individual civil rights -- rights contained in the state constitutions. The affirmative clause of Section 11, Article I reflects this role of the state in affirmatively protecting its citizens' right to free speech. Because the Ohio Constitution provides a more expansive protection for freedom of speech than does the United States Constitution, nothing in the Mitchell decision alters our conclusion in Wyant I that R.C. 2927.12 violates the Ohio Constitution.

The majority's disposition of this appeal is also inadequate because reliance on Mitchell addresses only the free speech challenge to the statute. The defendants in this case also raised challenges on the grounds of vagueness, equal protection, due process and overbreadth. In our unanimous opinion in Wyant I we said that "[t]hese arguments may have merit, especially in view of the concurring opinion by Justice White in R.A.V. v. St. Paul, supra, 505 U.S. at      , 112 S.Ct. at 2550, 120 L.Ed.2d at 327." (Emphasis added.) Wyant I, 64 Ohio St.3d at 579-580, 597 N.E.2d at 459. We merely declined to resolve them because our holding in Wyant I made it unnecessary.

It can, perhaps, be argued that reliance on Mitchell disposes of the overbreadth challenge. In no way, however, can it be argued that Mitchell disposes of the vagueness and equal protection arguments, because the United States Supreme Court specifically declined to address those arguments. Mitchell, supra, 508 U.S. at      , 113 S.Ct. at 2197, 124 L.Ed.2d at 443,

at fn. 2. The majority's reversal of our holding in Wyant I concerning the free speech challenge to R.C. 2927.12 now makes it essential that we address these other constitutional challenges to the statute. This is especially true since the lower court opinions declaring R.C. 2927.12 unconstitutional relied primarily on the vagueness challenge.6 For example, Judge Kessler, the trial judge in the May case, found that the phrase "'by reason of' as used in Ohio Revised Code {2927.12 describes no statutorily cognizable mental state, as required by Ohio Revised Code {2901.21 for an element of the offense, and is, therefore, impermissibly constitutionally vague under Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution." He also found the statute vague "because the language of the statute does not sufficiently specify the relationship of the race, et cetera of the other 'person or group of persons' to the actor or victim." State v. May (May 15, 1990), Montgomery C.P. No. 89-CR-4687/2, unreported.

If the majority is construing the "by reason of" language of R.C. 2927.12 to mean that the defendant intentionally selected his or her victim because of race, color, religion or national origin, it has an obligation to say so. The majority also has an obligation to inform trial judges that they should formulate jury instructions to explain this meaning to juries in R.C. 2927.12 prosecutions.

At the very least, Wyant is entitled to have his conviction vacated and remanded for a new trial, which would include such jury instructions. The jury received no instructions regarding the meaning of this language in R.C. 2927.12. Otherwise, there is no way to assure that he was convicted based on his conduct, not based on his beliefs.

III

For the above reasons, I would reaffirm our decision in Wyant I, and hold that R.C. 2927.12 violates the First Amendment to the United States Constitution and also violates, independently, Section 11, Article I of the Ohio Constitution.

Pfeifer, J., concurs.

A.W. Sweeney, J., concurs in Part II of the foregoing dissenting opinion, but does not participate in State v. Van Gundy, case Nos. 91-1211 and 91-1589.

FOOTNOTE:

1 The Wisconsin statute analyzed in Wisconsin v. Mitchell, supra, provided in part:

"(1) If a person does all of the following, the penalties for the underlying crime are increased as provided in sub. (2):

"(a) Commits a crime under chs. 939 to 948.

"(b) Intentionally selects the person against whom the crime under par. (a) is committed or selects the property which is damaged or otherwise affected by the crime under par. (a) because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person or the owner or occupant of that property." Former Wis. Stat. Section 939.645.

2 We recently held that the Ohio Constitution is an independent source of protection of civil liberties:

"The Ohio Constitution is a document of independent

force.  In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall.  As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups."  Arnold v. Cleveland (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus.

3  Other state supreme courts have interpreted an affirmative clause in their state constitutions to provide more expansive protection of free speech rights, including California, Colorado and New Jersey.  Robins v. PruneYard Shopping Ctr. (1979), 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341, affirmed sub nom. PruneYard Shopping Ctr. v. Robins (1980), 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741; Bock v. Westminster Mall Co. (Colo. 1991), 819 P.2d 55; State v. Schmid (1980), 84 N.J. 535 423 A.2d 615, appeal dismissed sub nom. Princeton Univ. v. Schmid (1982), 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855.

4  In the 1802 Ohio Constitution, the affirmative clause appeared in Section 6, Article VIII.

5  Baldwin's Ohio Revised Code Annotated (1990), Editor's Comment to Section 11, Article I, Ohio Constitution.

6  The trial courts dismissed the charges of ethnic intimidation against all appellants except Wyant based on the grounds that R.C. 2927.12 is unconstitutional.